# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:19-cr- 00601- HZ |
| v. | INDICTMENT |
| MATTHEW H. PETERS, | 18 U.S.C. §§ 1028A, 1347 |
| Defendant. | |

<u>UNDER SEAL</u>

## THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

1. **MATTHEW H. PETERS**, defendant herein, owned and operated a compounding pharmacy at 10000 SE Main Street in Portland, Oregon, that conducted business under the names Professional Center Pharmacy and Professional Center 205 Pharmacy (collectively, "Professional Center Pharmacy").

2. Professional Center Pharmacy filled prescriptions for, among other things, compounded pain creams, which were a particularly lucrative line of products. Private and federal healthcare insurance programs reimbursed pharmacies for such creams at rates far higher than the price of comparable over-the-counter or bulk-manufactured medications, because the creams were to be individually compounded on site according to prescribers' customized instructions.

3. To obtain payment from healthcare insurers for the creams and other medications it dispensed, Professional Center Pharmacy typically submitted claims to pharmacy benefit managers (PBMs), which adjudicate coverage by, and advance payment from, sponsoring federal and private insurance programs (including Medicare and Medicaid). In order to receive reimbursements through PBMs, Professional Center Pharmacy had to comply with the recordkeeping and other requirements imposed by the PBMs, the insurance programs they administered, and state and federal law.

4. CVS Caremark is a PBM and a "health care benefit program" as defined in Title 18, United States Code, subsection 24(b), in that it reimburses pharmacies for medications dispensed to individuals pursuant to "private [and] public plans [and] contracts, affecting interstate commerce, under which any medical benefit, item, or service is provided to any individual."

5. CVS Caremark administered prescription drug benefits for many patients Professional Center Pharmacy served. From April 1, 2014, through May 15, 2015, Professional Center Pharmacy sought insurance reimbursements of more than $3.4 million from CVS Caremark, which in turn paid nearly $1.69 million to Professional Center Pharmacy over the same period. CVS Caremark is located in Scottsdale, Arizona.

6. Among the recordkeeping requirements that CVS Caremark enforced for pharmacies operating in its network were requirements that they maintain documentary proof of each patient's receipt of the prescription medication dispensed to that patient.

7. Professional Center Pharmacy submitted claims for reimbursements from healthcare insurance programs administered by CVS Caremark directly to CVS Caremark. If CVS Caremark authorized payment on a claim, CVS Caremark would issue the payment.

8. In mid-2015, CVS Caremark decided to audit the claims for reimbursements that Professional Center Pharmacy had submitted between April 1, 2014, and May 15, 2015. CVS Caremark notified Professional Center Pharmacy of the audit by letter dated July 28, 2015, and an auditor traveled to Professional Center Pharmacy to conduct the on-site audit on August 31, 2015.

9. During the course of its audit, CVS Caremark identified discrepancies potentially requiring the reversal of payments for approximately 185 claims, totaling approximately $242,287. More than fifty of the discrepancies arose from the lack of records proving customers' receipt of medications. These discrepancies implicated more than $59,000 in potentially unwarranted payments from CVS Caremark to Professional Center Pharmacy. In addition, the scope of the discrepancies identified in the audit raised the prospect that Professional Center Pharmacy would be suspended from CVS Caremark's network, resulting in the pharmacy's loss of a substantial volume of business. CVS Caremark informed Professional Center Pharmacy and **MATTHEW H. PETERS** that any documentation that might resolve the discrepancies had to be submitted to CVS Caremark by October 27, 2015.

10. **MATTHEW H. PETERS** submitted documentation to explain the discrepancies on or about October 19, 2015. That documentation included 41 written attestations, each purporting to bear the electronic signature of an individual patient and confirming that the executing patient had received the prescription in question. Each of the electronic signatures was counterfeit, in that all of them were actually created by **PETERS** himself between October 9, 2015, and October 14, 2015.

11. After learning that representatives of CVS Caremark had rejected the false attestations, **MATTHEW H. PETERS** addressed to CVS Caremark's Audit Department a letter

attempting to offer a satisfactory explanation for the counterfeit signatures. Specifically, **PETERS** claimed in a letter dated November 18, 2015, that all of the patients for whom electronically signed attestations had been submitted had orally authorized Professional Center Pharmacy personnel to sign for them. This assertion was false.

## COUNT 1
### (Healthcare Fraud)
### (18 U.S.C. § 1347)

12.  The allegations in paragraphs one through eleven of this Indictment are re-alleged and incorporated herein.

13.  From not later than October 9, 2015, through at least November 18, 2015, defendant **MATTHEW H. PETERS** devised and intended to devise a material scheme to defraud CVS Caremark, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### SCHEME AND ARTIFICE TO DEFRAUD

It was part of the scheme that:

14.  For each claim for which CVS Caremark demanded proof that the patient had received the medication at issue, **MATTHEW H. PETERS** prepared, or caused to be prepared, a written attestation that purported to solicit the patient's electronic signature to confirm his or her receipt of said medication.

15.  In order to counterfeit the patient's electronic signature on each attestation, **MATTHEW H. PETERS** used DocuSign, an electronic signature service, purportedly to email a copy of the attestation from one of his email accounts, mpkmrealty@yahoo.com, to the patient at another email account **PETERS** controlled, matt@paragonmedicalpartners.com. **PETERS** then opened the attestation in the second account and signed it using his own DocuSign account

but the name and putative signature of the patient. DocuSign then automatically returned a putatively signed copy of the attestation to **PETERS** at mpkmrealty@yahoo.com.

16. **MATTHEW H. PETERS** then collected the forged attestations and submitted them, along with other documentation, to CVS Caremark on or about October 15, 2015, in order to convince CVS Caremark not to reverse the payments it had made for the subject medications to Professional Center Pharmacy.

17. To allay CVS Caremark's concerns about the validity of the signatures he had counterfeited through DocuSign, **MATTHEW H. PETERS** then submitted a statement to CVS Caremark on November 18, 2015, falsely claiming that each signature had been orally authorized by the putative signor.

## EXECUTION OF SCHEME AND ARTIFICE TO DEFRAUD

18. From not later than October 9, 2015, and continuing through November 18, 2015, in the District of Oregon and elsewhere, **MATTHEW H. PETERS**, knowingly and willfully executed and attempted to execute the above-described material scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of CVS Caremark, a health care benefit program as defined in Title 18, United States Code, Subsection 24(b), in connection with the payment for health care benefits, items, and services. All in violation of Title 18, United States Code, Section 1347.

////

///

///

///

## COUNT 2
## (Aggravated Identity Theft)
## (18 U.S.C. § 1028A)

19. The allegations in paragraphs one through eleven and thirteen through eighteen of this Indictment are re-alleged and incorporated herein.

20. In October 2015, in the District of Oregon and elsewhere, defendant did knowingly use, without lawful authority, a means of identification of another person, to wit said person's name and purported signature, during and in relation to the felony violation of 18 U.S.C. § 1347 charged in Count 1 herein, knowing that the means of identification belonged to another actual person, all in violation of Title 18, United States Code, Section 1028A(a)(1).

Dated: December 19, 2019

A TRUE BILL.

OFFICIATING FOREPERSON

Presented by:

BILLY J. WILLIAMS
United States Attorney

RYAN W. BOUNDS, OSB #00012
Assistant United States Attorney