**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Ryan W. Bounds
Assistant U.S. Attorney
Ryan.Bounds@usdoj.gov
(503) 727-1141
*Reply to Portland Office*



**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Billy J. Williams, United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

July 6, 2020

Whitney P. Boise, Esq.
Josh B. Ewing, Esq.
Boise, Matthews, Ewing LLP
1050 SW Sixth Avenue, Suite 1400
Portland, OR 97204

      Re:    *United States v. Matthew H. Peters*
            Case No. 3:19-cr-00601-HZ
            Plea Agreement Letter

Dear Counsel:

1.     **Parties/Scope**:  This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority.  This agreement does not apply to any charges other than those specifically mentioned herein.

2.     **Charges**:  The defendant agrees to waive indictment and to plead guilty to the Superseding Information, which charges him in Count 1 with Health Care Fraud in violation of Title 18, United States Code, Section 1347, and in Count 2 with Tax Evasion in violation of Title 26, United States Code, Section 7201.

3.     **Penalties**:  The maximum penalties for Count 1, Health Care Fraud, are 10 years in prison, a fine of $250,000 (or, if greater, twice defendant's gross gain or victim's gross loss), and 3 years of supervised release.  The maximum penalties for Count 2, Tax Evasion, are 5 years in prison, a fine of $250,000 (or, if greater, twice defendant's gross gain or the IRS's gross loss), and 3 years of supervised release.  In addition, defendant must pay a $100 fee assessment for each felony count of conviction.  Defendant agrees to pay the total fee assessment of $200 by the time of entry of guilty plea or explain to the satisfaction of the Court why this cannot be done.

4.     **Dismissal/No Prosecution**:  The USAO agrees to dismiss the Indictment returned in this case and to forgo any additional charges against defendant stemming from or relating to either (1) the operation of his compounding pharmacy businesses before January 1, 2020, or (2) the tax evasion conduct charged in Count 2 of the Superseding Information. The foregoing assurances are predicated on two conditions: First, all of the essential facts underlying such charges must be

known to the USAO at the time of this agreement and, second, defendant must be convicted and sentenced in conformity with this agreement.

5.      **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

6.      **Elements of the Offenses**:   In order for defendant to be found guilty of Health Care Fraud as alleged in Count 1 of the Superseding Information, the government must prove the following elements beyond a reasonable doubt:

> First, defendant knowingly executed a scheme or plan to defraud CVS Caremark by means of false or fraudulent representations;

> Second, those false or fraudulent representations related to a material fact;

> Third, CVS Caremark was a "health care benefit program," that is, a "public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual";

> Fourth, defendant's scheme or plan related to the delivery of or payment for health care benefits, items, or services; and

> Fifth, defendant acted willfully and with intent to defraud.

> In order for the defendant to be found guilty of Tax Evasion as alleged in Count 2 of the Superseding Information, the government must prove the following elements beyond a reasonable doubt:

> First, defendant took an affirmative act constituting an attempt to evade or defeat a tax or the payment thereof;

> Second, defendant acted willfully; and

> Third, additional tax was due and owing.

> The defendant stipulates that uncontested and admissible evidence of his relevant conduct as summarized in paragraph 7, *infra*, establishes each of the foregoing elements beyond any reasonable doubt.

7.   .   **Factual Basis and Relevant Conduct**: Defendant stipulates that the following is a true and accurate summary of his offense conduct. He further agrees and avers that every statement

herein is true and correct and that the government could prove every statement beyond a reasonable doubt at trial, including through evidence of these admissions.

### Count 1—Health Care Fraud:

a) By not later than January 2014 and continuing through at least November 2015, defendant owned and operated a group of compounding pharmacies, including two in Portland, Oregon, doing business as Professional Center Pharmacy and Professional Center 205 Pharmacy (collectively "PCP");

b) PCP sought reimbursement from CVS Caremark, an Arizona-based pharmacy benefits manager and a "health care benefit program" as defined in 18 U.S.C. § 24(b), in amounts totaling approximately $3.4 million for medication PCP purportedly dispensed between April 1, 2014, and May 15, 2015;

c) As a result of those requests for reimbursement, CVS Caremark paid PCP nearly $1.69 million;

d) In mid-2015, CVS Caremark audited the above-described claims for reimbursement and ultimately identified discrepancies potentially requiring the reversal of payments on approximately 185 claims for amounts totaling approximately $242,287;

e) More than fifty of the discrepancies—relating to claims totaling more than $59,000—arose from PCP's lack of required records documenting beneficiaries' receipt of the medications;

f) On or about October 19, 2015, in an effort to resolve these discrepancies, defendant submitted to CVS Caremark 41 written attestations that had been purportedly executed (using unique electronic signatures) by the above-referenced beneficiaries, confirming their receipt of the medicines for which PCP had obtained reimbursement;

g) When defendant submitted those attestations, defendant knew that the beneficiaries had not executed them, because he had signed the beneficiaries' names himself without first obtaining their authorization to do so; and

h) Defendant submitted the forged attestations to avoid CVS Caremark's rescission of the $59,000 in disputed reimbursements and to avoid PCP's suspension from the CVS Caremark network.

### Count 2—Tax Evasion

i) For tax years 2014 through 2017, defendant earned gross income of at least $13,832,187.26 primarily from the operation of PCP and other compounding pharmacies defendant owned or controlled in concert with others; and

j) During the years 2014 through 2017, defendant took the following affirmative steps among others to conceal the true amount of his income, taking each step with the specific aim of evading the assessment of personal income tax due to the IRS in amounts totaling more than $5.4 million:

i. Beginning in September 2013 and continuing to mid-November 2016, defendant diverted more than $3.3 million in pharmacy revenue to his personal use in bank accounts and property developments in Belize. To conceal this income from the IRS, defendant characterized the diverted funds as operating expenses on his pharmacies' books, failed to disclose his personal use of the funds to his tax return preparer (thereby causing the filing of returns that falsely omitted the personal income), and failed to disclose his interest in any foreign bank accounts to the IRS as required by law;

ii. In 2015 and 2016, defendant diverted $766,388 in revenue from his pharmacies to an entity called LML Shores LLC by depositing third-party checks payable to the pharmacies into a bank account he had created for LML Shores LLC. In 2015, defendant deposited to the LML Shores LLC bank account $368,817 in checks made payable to his pharmacies. In 2016 defendant deposited another $397,571 in checks made payable to his pharmacies. Defendant intended the diverted pharmacy income for his personal use, but he did not inform his tax return preparer about this diverted income, thereby causing his personal tax returns for 2015 and 2016 not to report this income to the IRS;

iii. In 2017, defendant diverted $1,624,192 in pharmacy income to his personal use for the purchase of a residence in Incline Village, Nevada. To do this, defendant used pharmacy revenue to buy three cashier's checks totaling $1,624,192 payable to a real estate title company in Nevada. To conceal this personal income from the IRS, defendant recorded the purchase of the cashier's checks on the pharmacies' books as payments to suppliers. Defendant also withheld information about these transactions from his tax return preparer so his 2017 income tax return failed to disclose the personal income.

iv. On June 2, 2017, defendant diverted $984,608.85 in pharmacy revenue to his personal use through a pharmacy manager's purchase of two cashier's checks payable to First American Title for closing on a residence in San Carlos, California. The pharmacies' books recorded the cashier's checks as inventory expenses, and defendant withheld information about these transactions from his tax return preparer so his 2017 income tax return would not disclose the personal income.

v. In October and November 2017, defendant diverted $2,639,345.32 in pharmacy revenue to his personal use through the purchase of six cashier's checks payable to escrow companies and the Charles Schwab account of the Vincent James Peters Trust (which, in turn, wired the funds to escrow companies) for closing on a residence in Laguna Beach, California. The pharmacies' books recorded the cashier's checks as inventory expenses, and defendant withheld information

about these transactions from his tax return preparer so his 2017 income tax return would not disclose the personal income.

vi. Beginning not later than mid-2014, defendant began transferring pharmacy revenues to bank accounts he held jointly with other family members. Among these transfers were: (1) from June 2014 through November 2015, the transfer of about $1,139,000 to an investment account defendant Peters jointly held with two family members; and (2) from October 2014 through January 2016, the transfer of about $753,000 to an investment account defendant Peters held jointly with a third family member. Even though defendant retained control of the funds and intended them for his personal use, he did not disclose the transfers to his income tax preparer and thereby caused his income tax returns for 2014 through 2016 to fail to disclose the income.

vii. In total, defendant diverted from his pharmacies and concealed from the IRS, by intentionally filing false personal income tax returns for the tax years identified below and by intentionally committing the other affirmative acts to evade described above, the following amounts of personal income in the corresponding years with the intention of evading income tax on said amounts:

| Tax Year | Income Diverted and Concealed |
|----------|-------------------------------|
| 2014 | $52,800.34 |
| 2015 | $368,817.53 |
| 2016 | $4,061,795 |
| 2017 | $9,348,773 |

The parties stipulate that the offense level applicable to Count 1 is 12, pursuant to U.S.S.G. § 2B1.1(a)(2) (base offense level of six), (b)(1)(D) (six-level enhancement for intended loss exceeding $40k). The parties further stipulate that the offense level applicable to Count 2 is 26, pursuant to U.S.S.G. § 2T1.1(a)(1) (base offense level of 24 under § 2T4.1(J) for tax loss exceeding $3.5 million), (b)(2) (two-level enhancement for use of sophisticated means). The offenses are not grouped pursuant to U.S.S.G. § 3D1.2; the combined offense level for both counts is thus 26 pursuant to U.S.S.G. § 3D1.4(c) (disregarding offenses more with offense levels more than nine levels below the most serious count).

8.      **Acceptance of Responsibility**: The defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under USSG § 3E1.1 for defendant's unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

9. **Waiver of Discovery**: As a material term of this offer and agreement, defendant expressly accepts the USAO's offer to make available the evidence gathered in the investigation of this matter for on-site inspection and the USAO's production of limited discovery as of the date of this agreement in full satisfaction of the government's discovery obligations in this case. Defendant knowingly, intelligently, and voluntarily waives his rights to further production of evidence or information from the government, even though he may be entitled to such production pursuant to the Federal Rules of Criminal Procedure, the discovery orders of the court, and any prior demands for discovery.

10. **Recommendation of 57 Months' Imprisonment**: In light of defendant's waiver of indictment, substantive motions, and full discovery, defendant's acceptance of responsibility as described in paragraph 8, *supra*, and defendant's compliance with all other terms of this agreement, the USAO will not recommend any sentence of imprisonment longer than 57 months.

11. **Additional Departures, Adjustments, or Variances**: The USAO agrees not to seek any upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement. Defendant agrees not to seek any downward departures or adjustments to the advisory sentencing guideline range under the sentencing guidelines provisions. The defendant may seek a downward variance pursuant to the factors in 18 U.S.C. § 3553 and may request any sentence, including a noncustodial sentence of probation.

12. **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence exceeding the advisory guideline sentencing range as determined by the Court at the time of sentencing without required notice to the parties. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. ' 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. ' 3582(c)(2).

Defendant expressly agrees that this waiver shall remain effective in the event that the USAO alters its sentencing recommendation consistent with paragraphs 8 and 10, *supra*, or because defendant otherwise breaches this agreement.

13. **Court Not Bound**: The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of

---

the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

14.     **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

15.     **Restitution**: Defendant agrees to pay restitution to the Internal Revenue Service prior to sentencing, and stipulates to an order of restitution in the amount of $3,441,263 (which reflects the total amount of criminal tax loss, $5,496,900, less credit of $2,055,637 for tax payments defendant already remitted to the IRS with the filing of amended corporate tax returns for the relevant years). Defendant understands and agrees that the IRS may assess additional interest and penalties pursuant to Title 26.

The total amount of restitution, with the credit for tax payments made with amended returns, and which defendant will be ordered to pay, consists of the following:

| Tax Years | Tax |
|-----------|-----|
| 2014 | $0 |
| 2015 | $114,814 |
| 2016 | $1,597,009 |
| 2017 | $1,729,440 |

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.
Defendant agrees to send restitution payments to the IRS at the following address:

IRS - RACS
Attn: Mail Stop 6261, Restitution

---

333 W. Pershing Ave.
Kansas City, MO 64108

With each payment to the IRS, Defendant will provide the following information:

a. Defendant's name and Social Security number;
b. The District Court and the docket number assigned to this case;
c. Tax year(s) or period(s) for which restitution has been ordered; and
d. A statement that the payment is being submitted pursuant to the District Court's restitution order.

Defendant agrees to send to the Clerk of the District Court and to the U.S. Attorney's Office Financial Litigation Unit notice of payments sent directly to the IRS, at the following addresses:

Office of the Clerk
United States District Court
740 United States Courthouse
1000 Southwest Third Avenue
Portland, OR 97204-2902

U.S. Attorney's Office
Financial Litigation Unit
600 United States Courthouse
1000 Southwest Third Avenue
Portland, OR 97204-2902

Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by the earlier of fourteen days from defendant's signature on this plea agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the USAO and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Defendant expressly authorizes the USAO to obtain a credit report on defendant. Defendant agrees to provide waivers, consents, or releases requested by the USAO to access records to verify the financial information. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

### Transfer of Assets

Defendant understands and agrees that, until a fine or restitution order is paid in full, he shall notify the Financial Litigation Unit of the USAO before transferring or causing the transfer of any funds or interest in property (other than through recurring debt payments and ordinary business operations) with a value exceeding $10,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

### Restitution

Defendant understands and agrees that the total amount of any monetary judgment that the Court orders defendant to pay will be due and payable immediately. Defendant further understands and agrees that pursuant to 18 U.S.C. § 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the government may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the USAO of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to 18 U.S.C. § 3664(k), defendant shall notify the Court and the USAO immediately of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

16. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea or rescind his waiver of appeal and post-conviction relief, as described in paragraph 12, *supra*.

If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and shall be precluded thereby from raising a breach claim for the first time on appeal.

17.     **Memorialization of Agreement**: No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court.  If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

18.     **Deadline**: This plea offer expires if not accepted by 5:00 p.m. May 20, 2020.

Sincerely,

BILLY J. WILLIAMS
United States Attorney

*Ryan Wesley Bounds*

RYAN W. BOUNDS
SETH D. URAM
Assistant United States Attorneys

I have carefully reviewed every part of this agreement with my attorney.  I understand and voluntarily agree to its terms.  I expressly waive my rights to appeal as outlined in this agreement.  I wish to plead guilty because, in fact, I am guilty.

7/6/2020
_____
Date

_____
Matthew H. Peters, Defendant

        I represent the defendant as legal counsel.  I have carefully reviewed every part of this agreement with defendant.  To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

7/6/2020
_____
Date

_____
Whitney P. Boise, Esq.
Josh B. Ewing, Esq.
Attorneys for Defendant