SCOTT ERIK ASPHAUG, OSB #833674
Acting United States Attorney
District of Oregon
**RYAN W. BOUNDS, OSB #00012**
Assistant United States Attorney
Ryan.Bounds@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:19-cr-00601-HZ |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MATTHEW H. PETERS,** | |
| **Defendant.** | |

The case against Matthew Peters started as an investigation into healthcare fraud, but it became apparent that his tax crimes were even worse. So it was that on August 4, 2020, Peters pleaded guilty to a Superseding Information charging him with one count of healthcare fraud and one count of tax evasion spanning four years and involving unpaid federal income taxes of nearly $5.5 million. The healthcare fraud charge has no effect on Peters's sentencing exposure under the U.S. Sentencing Guidelines, but the Guideline range for the tax charge—involving one of the largest individual tax losses in the history of this district—is 46 to 57 months'

imprisonment. In light of Peters's eager acceptance of responsibility when the investigation came to light, his prompt payment of the federal income taxes and interest he owed, and other factors pertaining to his personal circumstances, however, the government recommends a downward variance and a sentence of three years' imprisonment followed by a three-year term of supervised release.

I.  BACKGROUND AND OFFENSES OF CONVICTION

This case arose from an investigation by the Department of Health and Human Services' Office of Inspector General (HHS-OIG), the Oregon Department of Justice's Medicaid Fraud Unit, and other agencies into potentially illegal kickback arrangements at compounding pharmacies owned and operated by Peters and members of his family in several different states. Two such pharmacies, Professional Center Pharmacy and Professional Center 205 Pharmacy ("PCP" collectively), operated in the Portland metro area. The investigation ultimately revealed that Peters had devised various indirect means of incentivizing healthcare providers to write prescriptions for compounded drugs—custom-mixed medications that generate outsized reimbursements from Medicare, Medicaid, and other healthcare-benefit programs—and to direct those prescriptions to his pharmacies for dispensing.

These arrangements were at best legally dubious, but they made Peters's pharmacies enormously profitable. What's more, Peters demonstrated a willingness to cut corners to ensure that the profits kept rolling in. The scheme alleged in the indictment originally returned in this case (and summarily re-charged as Count 1 of the Superseding Information) involved one such episode.

The offense stemmed from PCP's requests for reimbursements from CVS Caremark, a major pharmacy benefits manager based in Arizona, for the period from April 2014 through May 2015. PCP sought reimbursements of approximately $3.4 million for medication PCP had purportedly dispensed and actually received payments from CVS Caremark of nearly $1.69 million. In mid-2015, CVS Caremark audited PCP's reimbursement claims and identified nearly a quarter-million dollars in potentially unwarranted reimbursements. More than fifty of the discrepant claims arose from PCP's lack of records documenting the beneficiaries' receipt of the medications at issue.

On or about October 19, 2015, seeking to resolve these discrepancies, Peters submitted to CVS Caremark 41 written attestations of receipt from the healthcare program's beneficiaries. Each of the attestations purported to have been executed through the Docu-Sign digital-signature platform. In fact, Peters had signed the beneficiaries' names himself, effectively forging their electronic signatures. Peters submitted the forged attestations to avoid CVS Caremark's rescission of the disputed reimbursements and—more importantly—to avoid CVS Caremark's suspension of PCP from its network. The latter event would have cost PCP millions in future business.

Peters did not manage to avert that result. CVS Caremark's auditors saw that the beneficiaries' attestations all bore the same "unique" digital code, and the company recouped its reimbursements for the undocumented deliveries and ultimately suspended PCP. The subsequent federal investigation confirmed that Peters had logged into Docu-Sign from his personal computer and signed the attestations *en masse*, using a Docu-Sign account associated with his own email account. This scheme triggered the above-referenced indictment, which charged

**Government's Sentencing Memorandum**                                            **Page 3**

Peters not only with healthcare fraud but with aggravated identity theft (which carries a mandatory two-year prison sentence) as well.

Peters seriously exacerbated his problems, however, by trying to hide his pharmacy profits from the Internal Revenue Service. The IRS's financial investigation into Peters's pharmacies revealed that he had generated nearly $14 million in gross income from their operations in just four tax years: 2014 through 2017. That was a lot of money, but it created big tax liabilities that Peters was disinclined to pay. Accordingly, by the fall of 2013, he began engineering a number of subterfuges to conceal his income and to fraudulently decrease the federal income taxes he apparently owed. Most of these subterfuges involved spending pharmacy profits on personal expenses, while telling his accountant (and the IRS) that they were legitimate business expenses—typically "drug costs"—properly deducted from business income on the pharmacies' own tax returns.

These purported "business expenses" included: $3.3 million for property and construction in the Caribbean nation of Belize; more than $2.6 million for a personal residence in the swanky community of Laguna Beach, California; more than $1.6 million for another residence in Incline Village, Nevada; nearly a million dollars for third residence in San Carlos, California; and millions in cash transfers to straw entities and trust accounts in the names of others but under Peters's control and meant for his own personal use. All told, these subterfuges understated Peters's income tax liability for the tax years 2014 through 2017 by more than $5.4 million.

To his credit, Peters readily admitted his misdeeds when confronted by law enforcement upon his arrest on the original healthcare-fraud indictment in this case. He entered into a plea agreement whereunder he agreed to plead guilty to charges of healthcare fraud and tax evasion in

exchange for the government's dismissal of the aggravated identity theft charge. He also agreed to pre-pay restitution to the IRS in the amount of $5,496,900 (less payments remitted to the IRS by the pharmacies with amended corporate returns) before sentencing in this matter. As of March 17, 2021, Peters had remitted $3,441,263 to the Clerk of the Court.[1]

## II. GUIDELINES CALCULATION AND RECOMMENDED SENTENCE

| Guideline Provision | Points |
|---|---|
| Base Offense Level—Count 1 ((USSG § 2B1.1(a)(2)) | 6 |
|   Loss exceeding $40,000 (USSG § 2B1.1(b)(1)(D)) | 6 |
| TOTAL—Count 1 | 12 |
|  |  |
| Base Offense Level—Count 2 ((USSG § 2T1.1(a)(1); § 2T4.1(J)) | 24 |
|   Sophisticated Means (USSG § 2T1.1(b)(2)) | 2 |
| TOTAL—Count 2 | 26 |
|  |  |
| Adjustment for Acceptance (USSG § 3E1.1) | -3 |
| Total Offense Level | 23 |
| Defendant's Criminal History | I (0 points) |

Because the offenses are not grouped for purposes of the Sentencing Guidelines and the level for Count 1 is more than nine levels lower than that for Count 2, the total offense level applicable to both counts is 23. *See* USSG §§ 3D1.2; 3D1.4(c). The resulting advisory Guideline range is 46 to 57 months' imprisonment. In light of Peters's unusually prompt acceptance of responsibility, waiver of discovery (which was inordinately vast as a result of the

---

[1] The judgment in this case should direct the clerk's payment of the restitution as follows:

    IRS - RACS
    Attn: Mail Stop 6261, Restitution
    333 W. Pershing Ave.
    Kansas City, MO 64108

long-running, multi-agency investigation in this matter), filing of amended tax returns, prepayment of restitution, and other factors enumerated under 18 U.S.C. § 3553(a), however, the government recommends a sentence of three years' imprisonment on each count, followed by a three-year term of supervised release under the conditions recommended by the Probation Office. Such a sentence would reflect, essentially, a four-level downward variance from the high-end of the applicable Guideline range. The PSR-writer agrees with the recommendation for a downward variance of this magnitude but recommends 37 months' imprisonment (the top of the range at offense level 19).

### III. NO LESSER SENTENCE IS WARRANTED

Peters urges this Court to impose a lighter sentence still, but a prison sentence of less than three years would defy the statutory commands that the sentence "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)-(B). The Introductory Comment to the tax sentencing guidelines emphasizes that, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws" should be a "primary consideration" in imposing sentences in tax cases. USSG § 2T1.1.

Deterrence would be sorely undermined by a sentence of less than three years for tax evasion of such magnitude in these circumstances. Peters generated vast sums of money over the course of several years by operating his pharmacies in ways that were at least unscrupulous and, in at least one instance, flatly illegal. Throughout the same period, he engaged in multiple financial shenanigans to defraud the IRS out of millions he owed in taxes. He did so solely for

the purpose of funding a jet-setting lifestyle for himself and his family. This was a long-running scheme of elaborate deception and conspicuous greed. A serious sentence—a sentence of not less than three years—is essential for deterrence and just punishment.

In light of historical outcomes in this district, any lesser sentence would fail "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This is easily one of the largest tax evasion cases to be resolved by plea in this district in the last 15 years, yet such cases have routinely earned sentences of more than three years. Most recently, in the case of *United States v. Lund*, case no. 3:19-cr-00244-SI, which involved a tax loss of only $1.75 million, Judge Simon imposed a sentence of 41 months' imprisonment. Similarly, in *United States v. Joling*, case no. 6:11-cr-60131-AA, Judge Aiken imposed a sentence of 60 months' imprisonment for a tax loss of only $1.25 million. To be sure, both of these cases involved aggravating factors absent here, but they also involved tax losses of less than a third of that involved in this case and resulted in longer sentences than the government is recommending. A three-year term of imprisonment is necessary to keep the result in this case in line with results in *Lund*, *Joling*, and comparable cases.

IV.     CONCLUSION

For the foregoing reasons and pursuant to the parties' plea agreement, the government recommends a sentence of three years' imprisonment, followed by a three-year term of

///

///

///

supervised release, and an order of restitution to the IRS for at least $3,441,263. Peters must also be ordered to pay a fee assessment of $100 on each count of conviction.

Dated: December 1, 2021

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney


/s/ *Ryan Wesley Bounds*
RYAN W. BOUNDS, OSB #00012
Assistant United States Attorney